1813 Bd. of Trustees of Univ. IL v. Micron Technology, Mr. Scharzer. Your Honors, Adam Scharzer on behalf of Micron Technology, again, may it please the Court. For seven years, Micron has litigated this case. For the last nearly four years, it's of patents with that issue with respect to this set of litigation were invalidated by the PTAB and that judgment was affirmed by this Court. Are you seeking work, seeking fees for work on the patent aspects of this case? Well, we have sought fees with respect to certainly the breach of contract. We think that is the activity that's most concerning here. Below, I think, well, certainly the seeking fees, one list, an estimate of fees, and we provide an estimate of fees broken down for the District Court by the work that was done on the patent work before the patents were invalidated, the work that was done at the PTAB, and then the work that was done after this Court's affirmance of the PTAB's decisions. So your attorney's fees claim was limited to the third category? And I think the Supreme Court President would bear that out, that our fees that we would seek need to be related to the work that was done with respect to the unreasonable conduct that makes this case exceptional. And the unreasonable conduct arose when we went back to the District Court nearly four years ago following the invalidity of these patents. Can I ask, what I realize is a point that you and I did not latch onto below, but why is it not quite clear under our precedent, sure law, however one pronounces that, that 285 just absolutely does not authorize the award of fees for this contract claim, which is not piggybacked on the patent claim? Well, Your Honor, I would have to respectfully disagree that there's not a piggyback here. All right, let me be more precise. Was it inter spiro? Is that the first case? That's correct, inter spiro. So that said, and then was read by Gjurov to say, we have a state law claim whose content depends on finding patent infringement. That's false here. It's not true here. We have an independent contract claim not tied in that specific way to a claim of patent infringement. Why does Gjurov and the earlier case, Machinists, not absolutely bar use of 285 for fees for that work? Your Honor, I would have- And I realize you and I did not make this argument below. Correct. So the argument is waived here on appeal, but I want to- We're entitled sometimes to decide legal questions that were not preserved below. So two questions. Why is it wrong on the merits? And then we can talk about why this isn't the case in which we ought to overlook the waiver because the answer is so clear. Well, Your Honor, it's wrong on the merits because of the positions that the university has taken throughout this litigation, which is that it could not prove a breach of contract until it first proved patent infringement. This is patent infringement of invalid patents. So if you turn with me to your appendix, page 5787, this is in the sealed record, but I will read this because I don't believe this is at all confidential. The university took the position. The fact is that Micron has known since at least the District Court for the breach of contract claim after invalidity. The fact is that Micron has known since at least August 2015 that the university would rely on patent infringement to establish breach of contract. So the university has been utterly clear throughout. Now, they've taken positions. They've bounced around with positions. They say, well, no, it's not patent infringement. It's just practicing the claims, and that's not infringement. And linear tech resolves that in Micron's favor. But it is very clear that the university has always pursued its breach of contract claim as a second bite at the apple to try to prove patent infringement. And that's the problem with the university's case when we went back down. Upon invalidation of the university's patents, they were not entitled to carry a case or attempting to prove patent infringement. So the term patent infringement can have at least two different meanings. One is liability for practicing the patent, and the other is just practicing the patent. So once there's no valid patent, there can't be any liability for anything you do under that patent. But why is their argument not simply, we understood that the proprietary interest that the contract, we say, obliged us to honor is exactly what would be covered by practicing the steps laid out in the claims. Call that infringement. We don't care whether you call it infringement. It's the definition of the interest. Why would that be on the InterSpero as opposed to the Gershwof side of the line about 285's coverage? Well, Your Honor, I think that the InterSpero case resolved this because the InterSpero case is very similar to the claim in which the university brought here, except in InterSpero there was actually a commercial license agreement, and it was the alleged breach of the commercial license agreement which predicated a breach of contract claim going through the district courts. And as part of trying to prove the breach, the plaintiff there with the license agreement and the IP had to prove patent infringement. But the patent infringement issues were resolved before just like this case. Yeah, but even if that weren't true, isn't this a situation in which in order to determine the amount of a license, you would have to consider patent issues, and it's inextricably intertwined in that sense anyway, isn't it? Well, I think that's right. The problem here, though, is the agreement itself, the work agreement that we were just looking at, doesn't include any measure of damages or define how to calculate damages. And that's the difference between a lot of these cases with respect to breach of contract claims is there is an actual license agreement that requires royalty payments. No, no, but in order for them to prevail, they'd have to show what a reasonable license fee would have been here. And in order to determine what a reasonable license fee would have been, you certainly would have to consider patent issues. Well, that's absolutely true, and that's what the university pursued down below. The university pursued its patent infringement claim. It served on us patent infringement expert reports. I don't think you're understanding what I'm saying. I'm saying even if it's true that you could show a breach of the license agreement without getting into patent issues, in order to determine the amount of damages, you'd have to determine what a reasonable license fee was. And in order to determine what a reasonable license fee was at the time, you would have to get into patent issues. So at least to that extent, it's inextricably intertwined. That's absolutely true, and that is the standard that Interspeer has set forth, is this inexplicably intertwined standard. And that is the measure of damages that the university has pursued in an attempt to prove up alleged contract damages. They served an expert report based on the entire market value rule theory. And that was an expert report that we had to file a Dow bear motion against down below. All of this despite the existence of a stipulated judgment as to non-infringement by all of Micron's products. So we were all a little dumbfounded when we went back down to the district court. We entered into a stipulated judgment of invalidity and non-infringement, and then had to pursue all of our patent infringement defenses, as well as defenses to a trade secret misappropriation claim. There was an attempt to backdoor that in to the case, which we learned was baseless from the university's corporate witness. Why don't you spend a few minutes, unless there are other questions on this point, telling us why we should reverse the district court's discretionary determination not to award fees? Your Honor, here with respect to the district court's determination, we all know that the district court was required to apply the totality of the circumstances standard. Instead, what the district court applied was a Rule 12 standard and determined that the district court's determination, the most egregious action was the motion to dismiss and that the university had survived a motion to dismiss and that therefore they could proceed in this case wasn't exceptional. But by failing to consider 11 different circumstances in the record below that we raised to the district court... What do you mean by failure to consider, failure to identify in its opinion? It didn't say it didn't consider them. Well, certainly the university identified, I'm sorry, the district court identified invalidity as something that it was at least aware of, but the district court never identified the stipulated judgment of non-infringement in our arguments with respect to that and how that precluded the... The district court doesn't have to write an opinion addressing every circumstance, does it? Well, by focusing on the Rule 12 standard, the district court necessarily failed to consider the totality of the circumstances that were raised by Micron's briefing below. The Supreme Court in Octane Fitness also provided a separate independent basis for awarding fees in 285 cases, and that's on the basis of evidence of unreasonable conduct, and in particular, unreasonable conduct that goes unrebutted below, and that's exactly what we had here as well. We raised a number of issues of the university's unreasonable conduct with respect to litigating this as a patent infringement case despite the existence of the stipulated judgment of non-infringement and the judgment of invalidity. Right, but why isn't it at least a reasonable answer to say, now you're just playing a language game about the term infringement? Because Linear Tech precludes that, Your Honor. Linear Tech, in that opinion, Linear Tech said, there's no substantial evidence that AATI actually practiced the claimed method, which is required to prove infringement. This actually practice argument that the university makes is an argument they now make for the first time on appeal, trying to draw some line in between actually practice and infringement, but Linear Tech shuts that down, and so that's why the university... How did the case in the district court get to the point? I didn't think it did get to the point where there was any adjudication or even preliminary adjudication about whether if they were right about their view of the work agreement and what they would have to show is that the commercial use met the terms of the claim. We don't have any opinion that says anything, do we, about whether... The university did not have no other position other than we breached this agreement because there was an alleged infringement that occurred. That is, you were doing things that the claims read on. Let's just call it that. Forget the word infringement. It's really, I think, un-clarifying. We don't have any litigation, do we, about any adjudication about whether what you were doing during those 2 1⁄2 years or something that's really at issue here for either the claims read on that activity or didn't? There was no adjudication per se. There were a number of pending summary judgment motions below. For instance, we filed a motion for summary judgment of non-infringement and non-commercialization, which was mooted by the summary judgment grant. And you think that the district court... But you won on the contract. We won on the contract. Everything else went away. Everything else was mooted. And you think that the district court, in deciding the fees question, had to then adjudicate the summary judgment motions that the contract ruling made moot? No, the district court didn't have to adjudicate the summary judgment motions, but it did have to consider the circumstances in which the university required Micron to litigate and the way in which the university carried forward its case, which was that it was going to prove a patent infringement of invalid patents. It was going to prove that you undertook activity covered by the claims? That's another way of putting it, but that's just part and parcel with proving infringement. What you are appealing to as outrageous is the notion that they were going to prove patent infringement after the patent's invalidated. That depends on the connection between validity and an ability to prove infringement. The outrage that you're trying to generate is not supported by simply describing it as they were trying to prove you engaged in activity that the claims read on, which is all that their claim depended on, their contract claim depended on. Apologies. Your Honor, I don't believe there was any way that the university could have proved that our products practiced their claims. Their claims are void ab initio. They don't exist after the invalidity. There's no IP there to protect. There's nothing to practice. It's a legal nullity as if it never existed. But our claim is not limited to just that as well. We also identified the circumstances of phrasing the trade secret misappropriation allegation, which the university corporate witness willingly admitted was a baseless allegation that was raised by the university, yet another allegation raised by the university that we had to litigate all the way through the close of fact discovery in the case. So surely the district court could conclude that not a lot of money was spent on that and that they gave it up early in the case and that this wasn't significant to make it different from, to make it stand out from the usual run of cases, right? Well, we don't know what the district court concluded. Well, that's the point. The district court doesn't have to write a 100-page opinion detailing its decision as to each sub-argument in the case, right? And that's not Micron's position, but Micron's position is the octane fitness standard, and the octane fitness standard is, you know, just give lip service to the totality of the circumstances. The octane fitness standard is that one consider the totality of the circumstances. Yeah, but this happens all the time. You're conflating didn't consider with didn't discuss. It's not the same thing. Well, Your Honor, there's no indication that the district court did consider the fact or was even aware of the existence. In case after case, courts assume in summary judgment and other contexts that courts considered the arguments that were made. You'll find lots of cases that say you don't have to articulate the reasons that you rejected particular arguments. Certain courts have certainly determined that in a number of cases. We do that, right? We do. We don't always arrest every argument. Yes, Your Honor. What was the basis for you trying to make the council personally liable for attorney's fees? Well, we moved on that below. I am aware of the Gust case that was decided by this court very recently. It's not something we appealed here because the university has waived its arguments with respect to 285. Even under the university never made the argument below that 285 does not apply to the entirety of the fees request here. And I'll see that I'm in my rebuttal time. So I'll attempt to reserve the balance. There is no balance, but we'll give you two minutes. Thank you, Your Honor. Negative balance. Negative balance. Negative balance for the two minutes. Mr. Vanette. Good morning, Your Honors. May it please the court. Jacob Vanette on behalf of the University of Illinois. I want to start with the applicability of Section 285. There can be no genuine dispute that this is a state law breach of contract claim. In the court below, Mike Rahn actually agreed with this position because it tried to remand this case to state court. Then the district court agreed when it retained the case on its docket by exercising supplemental jurisdiction under Section 1367. Now my colleague spent a great deal of time talking about how the patent issues are intertwined with the state law breach of contract issues based on the way the university actually litigated the claim. But that's not the standard. The Supreme Court in Christensen v. Colt Industries stated very clearly that if on the face of a well-pleaded complaint, there are reasons completely unrelated to the provisions and purposes of the patent laws, why the plaintiff may or may not be entitled to the relief it seeks, then the claim does not arise under those laws. And that is exactly the case here. I took the heart of Mr. Chorcher's argument about this that to be something like when you told the district court what you think the breach was, you yourself made as the only assertion of what the breach was the assertion that they were practicing the claims. Your Honor, I'm not sure that we necessarily made that exact assertion in the complaint. I think it's the way the complaint reads itself. I wasn't limiting myself to the complaint. They referred to your experts and your damages. They did not limit it to the complaint. What aspect of your effort to show breach was separate from an effort to show that they were engaged in activities that the claims read on? Well, Your Honor, other than the assertion briefly of trade secret misappropriation, I don't think that the way the case was actually litigated was divorced from the underlying patent issues. It is true that our theory, as we actually litigated it, was contingent on showing that they practiced the asserted claims. But I think that what the Supreme Court is saying in Christensen is that that is irrelevant to the determination of whether the claim actually arises under the patent laws. And by attaching the work agreement to the complaint, the work agreement itself became part of the pleadings. And there are ways in which the university could have shown that Micron breached the work agreement without resorting to the patent laws. For example, if you look at Section 2A, which has been a big part of both down below and here, the way the parties have discussed the proper interpretation of the agreement, if Micron had, for example, taken the wafers that the university annealed for them and instead of performed experiments on them, just threw them into a product and started selling it, that would be a clear violation of the contract. But the university wouldn't have to resort to the patent laws to show that Micron had breached the agreement. And to Judge Dyke's point about the reasonable royalty calculation and that being intertwined, I think that the university wouldn't have had to resort to the entire market value rule or any sort of patent theory of damages to show how it had been damaged by Micron's breach of Section 2A. And so I think that's the key here, that regardless of how the case was actually litigated. Did you allege a violation of 2A, a breach of 2A? In the complaint, Your Honor, I believe we simply alleged a violation of the work agreement generally. We didn't limit the allegations of breach to a particular section. And it's the way the complaint reads that is determinative of how or whether the claim arises under the patent laws. Right. But why should the arising under standard be the same as the standard for determining what piece of the litigation is covered by 285? Because, Your Honor, the way this court characterized the applicability of Section 285 in Interest Bureau is that it only applies to patent claims. And so I think that to determine whether it's actually a patent claim, it has to arise under the patent laws. And so that's why it goes into this question of whether the breach of contract claim actually arises under the patent laws. And that's why I think it's important to also consider the fact, A, that Micron agreed with our position when it tried to remand the case to state court, and B, that the district court also agreed by retaining the case by exercising supplemental jurisdiction, instead of saying, well, no, this breach of contract claim also arises under the patent laws, and so it's a Section 1338 claim, and I'll keep it for that reason. But in the event that this court disagrees with that position and that Section 285 does apply, there is still no basis to reverse the district court's discretion that this is an unexceptional case. First, with respect to the university's breach of contract claim and the viability of that claim. The university's breach of contract claim was predicated on the simple theory that Micron promised to take a license to the university's intellectual property before commercializing the deuterium annealing process that it embodied. When the university encountered evidence that Micron had used deuterium in its commercial products, it reasonably believed that Micron might have breached the contract. The work agreement obligation to take a license, as the university read the agreement, was not contingent on patent validity. So this court's Shell Oil decision allowed that breach of contract case to continue even after the university's claims were invalidated in IPR. Here they provision the 2C that you rely on for the contractual obligation. It includes language about intellectual property, right? Yes, your honor. So doesn't that require, this is not a contract provision that says if you perform the process described in claims 1 through 17 of the 624 patent or something, then you must pay us. This is one that says you have to, in your view, that there is an obligation to take a license, which was the subject of the first case, is about an obligation to take a license for intellectual property. Once the patent was held invalid, isn't that a null set? No, your honor, because at the time that the work agreement was entered into there was valid intellectual property and the university wasn't entitled to a presumption that that intellectual property was valid and that's a statutory right that the university has. Right, but if the obligation is limited to an obligation to take a license for using intellectual property, then are we now back into that German name case trying to figure out whether before the coal or something, whether the license, whether the contract, in your view, imposed that obligation up until the time it was either held invalid or notice was given that there was an assertion of invalidity? Yes, your honor, that's exactly right. That does depend on the applicability of Shell Oil. Oh, Shell is the other name, right. It's much easier to pronounce, your honor. So that Shell Oil case is precisely what the district court relied on in allowing the breach of contract claim to continue and it said that the work agreement in this case was analogous to a license bearing royalty or a royalty bearing license, excuse me. And for that reason, the university could continue to assert its breach of contract claim even in the face of invalid patents. And so, and that was the university... What is the difference between coal in this case in the sense that in coal there wasn't any dispute about the obligation to pay the royalty apart from the defense of patent invalidity, which is not the situation here? That's correct, your honor. But in the event that the university, for example, if the university ends up winning, hypothetically speaking, one in the court below on its interpretation, then the Shell Oil case becomes applicable because of that analogy. And in the motion to dismiss stage, the district court faced that question, decided that the university's reading was the most reasonable reading, and so you reach that second question of whether the Shell Oil case applied and concluded that it did. And this case would not have continued. Micron would not have been forced to litigate a breach of contract case if the district court had disagreed with the university. And it never would have incurred the fees that it did to defend it. So the university's conduct wasn't unreasonable to continue litigating a case that the district court said, yes, your theory is correct, at least at this stage, and allowing the case to continue. And the theory both on the interpretation of 2C and on the applicability or inapplicability and on the question of what Shell Oil had to say about this. That's correct, Your Honor. Those two points were already, you already had an expression of a pro-university opinion from the district court. That's correct, Your Honor. And we actually had that on multiple different occasions from the district court because Micron filed a motion for reconsideration of its denial of the motion to dismiss. And it challenged, it specifically challenged the applicability of that Shell Oil case. And the district court again said, no, this is an analogous situation. The Shell Oil case applies. And the district court felt that it was necessary for it to beat a dead horse. And that's a direct quote from its order on the motion for reconsideration. And then reiterated an entire paragraph of its order on the motion to dismiss on why the Shell Oil case is applicable and why the university's breach of contract claim remained viable. And so when it was faced with those exact same questions on a motion for attorney's fees, it had already decided that the university's claim was viable and it wasn't brought to bad faith. It wasn't an unreasonable, exceptionally meritless claim. And so it had no obligation to re-explain that ruling. And so it didn't feel that it was necessary and it didn't do that. And so for that reason, Your Honors, the district court didn't abuse its discretion in saying that the university's breach of contract claim was exceptionally meritless. Turning to the way the case was litigated and the reasons for the university bringing the case to begin with, the district court made an explicit finding that the evidence Micron presented to these points simply did not support its allegations. And that finding was not clearly erroneous. Starting with the university's pre-suit investigation, the university conclusively determined that Micron had used Deuterium in its commercial products. And based on the previous dealings between the parties, it suspected that this could mean that Micron had commercialized the university's intellectual property. But even then, the university did not rush to court to test its claims. It approached Micron and attempted to resolve the dispute amicably outside of court. During those discussions, it tested its theories and Micron responded. And even after those discussions fell through, the university didn't feel that Micron's responses were sufficient to make it question the viability of its claims. But even then, it still didn't rush to court. Even after the discussions fell through, it tried to restart the discussions through alternative channels using alumni within Micron to try and get the discussion going. Leslie Miller Nicholson explicitly says that the university did not want to sue Micron either for patent infringement or for breach of contract. But Micron refused to deal with the university without the university suing them. And this also goes to the university's motivations for filing suit. Simply put, the university wanted to defend the integrity of its intellectual property and its work agreement process. And Micron admits that's the case in its briefing. And the motivation to implement a statutory patent right or to enforce an agreement between two parties is not an improper motivation to bring a lawsuit. In providing its settlement discussions or its settlement calculations, the university provided detailed breakdowns of what it thought would be a reasonable recovery or trial, what it thought would be a reasonable royalty if Micron had ended up taking a license, and provided a discounted lump sum value to Micron. This is the antithesis of an extortionately high settlement demand. And that's even assuming that an extortionately high settlement demand, whatever basis Micron has for making that characterization, is even a basis to find a case exceptional. Because this court has said that nuisance value settlements, which SFA Systems defines as 10% of the cost to defend, that merits an exceptionality determination. But this is the opposite of that. Micron is saying this is too high. But even in that regard, Micron is wrong because the university provided its math, explained why it made those settlement offers, and Micron actually hasn't challenged the accuracy of that math or challenged the royalty rate that the university used in making those calculations. You said a couple of times in your brief something to the effect that the Bayh-Dole Act requires or encourages, I forget how strong your word was, the university to go out and press such patent rights as it has. I believe the word I used was obligates. Obligates. So where does that come from in the Bayh-Dole Act? I mean, there's a general obligation to commercialize, which might go no further than to say try to get it out into the marketplace, but that doesn't quite cover and go out and make sure people pay for it. I believe that's true, Your Honor, but I think that the way the university approaches it is that if it has a reasonable suspicion of patent infringement and it's not being paid for that, the use of its technology, it still has an obligation to press those claims. Any patent owner is going to want to press its rights in terms of... Right, but what in Bayh-Dole? I mean, I can imagine, but I haven't read all of it, so I'm, I guess, hoping for quick guidance. I can imagine something that says we're going to give the university certain kinds of special rights and protections, and in exchange we want them to go out and collect money from commercial users so they can feed that back into university research, and maybe then the National Science Foundation will be able to reduce its budget and not have to carry all the burden of university research. I can construct a little theory, but is there something actually in the Bayh-Dole Act that obligates those covered by the Bayh-Dole Act to go out and try to enforce their patent rights? So, Your Honor, I don't have a quote from Bayh-Dole or a direct answer to your question right off the top of my head. I can file a brief two-page brief within two days if you would like. My time is up, so I will... Signal it or something? Yeah. No, don't bother to do that. Okay, thank you. Thank you, Mr. Fernand. Mr. Scharzer, you have two minutes. Your Honor, just briefly, counsel for the university suggested that they could prove a breach by pointing to Section 2A of the work agreement, but in the briefing below in the other appeal we just argued, the 1511 appeal, it's the blue brief at page 17, the district court embraces this and admits, indeed, as the district court notes, the university has willingly admitted that there has been no breach of Paragraph 2A. With respect to Cole, Cole is not applicable at all to this case. The Cole case assumed that infringement could be shown. The university could never show infringement on the basis of the stipulated judgment of non-infringement. Importantly, Cole also, the Shell Oil case, also had a license agreement in play, a license agreement for the payment of royalties for the commercial use of a product, and that license does not exist in this record, and Cole is inapplicable to this case. Counsel, I asked you before, what was the basis? I meant the legal basis for making opposing counsel personally liable for attorney's fees. Well, it was the vexatious conduct that occurred down below with respect to the filing of a number of motions. So, to review those briefly, for your honor, the university's counsel filed a motion for injunctive relief. So, in your brief, you gave us the legal cases that support that position? We gave you the underlying basis for why the vexatious conduct occurred below. No, I know that, but what's the legal basis for making opposing counsel personally liable? Well, I think it would be 1928 U.S.C., 1927 itself, and acting in a vexatious manner to increase the cost of litigation. Okay. Okay. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you.